**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000828
03-DEC-2019
10:21 AM**

NO. CAAP-16-0000828

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KATE X. CUI, Claimant-Appellant,
v.
STATE OF HAWAI'I, DEPARTMENT OF HEALTH,
Employer-Appellee, Self-Insured
(Case No. AB 2011-206; DCD No. 2-09-40756)

and

KATE X. CUI, Claimant-Appellant,
v.
STATE OF HAWAI'I, DEPARTMENT OF HEALTH,
Employer-Appellee, Self-Insured, and STATE OF HAWAI'I,
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT, Adjuster-Appellee
(Case No. AB 2013-232; DCD No. 2-12-40661)


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Claimant-Appellant Kate X. Cui (Cui) appeals from the
October 26, 2016 "Decision and Order" (October 26, 2016 Order)
entered by the State of Hawai'i Labor and Industrial Relations
Appeals Board (LIRAB).

On appeal, Cui contends that the LIRAB erred when it:
(1) affirmed the July 1, 2011 and June 6, 2013 decisions of the
Director of Labor and Industrial Relations, Disability
Compensation Division (Director) in LIRAB Case No. AB 2011-

206/DCD No. 2-09-40756, as LIRAB held that the Director reserved the question of whether Cui's Major Depressive Disorder was related to her August 3, 2009 work injury and declined to address that issue; and (2) reversed the Director's June 6, 2013 decision in LIRAB Case No. AB 2013-232/DCD No. 2-12-40661, as LIRAB held that Cui's claim filed on August 28, 2012 for a March 25, 2010 Major Depressive Disorder injury was time-barred and declined to address the merits of the claim.

Employer-Appellee State of Hawai'i, Department of Health (Employer) is appellee in this matter as it pertains to LIRAB Case No. AB 2011-206/DCD No. 2-09-40756. Employer and Adjuster-Appellee State of Hawai'i, Department of Human Resources Development (Adjuster) (collectively, Employer-Adjuster) are both appellees in this matter as it pertains to LIRAB Case No. AB 2013-232/DCD No. 2-12-40661.

## I. BACKGROUND

### A. Cui's First Workers' Compensation Claim - LIRAB Case No. AB 2011-206/DCD No. 2-09-40756

On September 22, 2009, Cui filed a claim for workers' compensation benefits for an Adjustment Disorder with Mixed Anxiety and Depressed Mood, which she alleged she sustained on August 17, 2009 (WC Claim 1). Cui claimed that her injury arose as the result of abnormal and excessive work pressure due to understaffing, disrespectful and unprofessional treatment, and work performance criticisms from her then supervisor.

On April 22, 2010, the Director determined, *inter alia*, that Cui's WC Claim 1 was a work injury that resulted in an Adjustment Disorder with Mixed Anxiety and Depressed Mood. It was further agreed by Cui, Employer, and Adjuster, as Employer's representative, that the correct date of injury was August 3, 2009, and that Employer voluntarily accepted liability for the particular injury. Neither party appealed this decision.

2

Cui was terminated from her position with Employer on March 25, 2010.

On March 7, 2011, Adjuster, as Employer's representative, sent notice to Cui that it would be terminating her temporary total disability benefits for WC Claim 1 on March 21, 2011, based on its determination that Cui's current diagnosis of Major Depressive Disorder resulted from her termination and not her WC Claim 1 work injury.

In a July 1, 2011 decision, the Director determined, inter alia, that Employer was justified in terminating Cui's temporary total disability benefits from WC Claim 1, as Cui's Major Depressive Disorder condition resulted after termination and was no longer the result of the WC Claim 1 work injury. Cui appealed the Director's July 1, 2011 decision to the LIRAB on July 11, 2011.

On August 10, 2012, Cui moved to temporarily remand the case to the Director on the assertion that Cui would file an amended WC-5 Form listing Major Depressive Disorder as an additional injury in WC Claim 1 and, out of an abundance of caution, also file a new, separate WC-5 Form alternatively alleging that her Major Depressive Disorder resulted from her March 25, 2010 termination. The LIRAB granted the motion on August 16, 2012, and temporarily remanded the case to the Director to "address [the] compensability of a claim to be filed by Claimant for Major Depressive Disorder and for determination of any other issue the Director deems appropriate."

The issue on remand was heard at a May 2, 2013 hearing.[1] Cui appears to have not filed an amended WC-5 Form listing Major Depressive Disorder as an additional injury stemming from her August 3, 2009 injury until May 3, 2013

_____

[1] The record does not contain a transcript of this hearing.

3

(Amended WC Claim 1).[2]  However, Cui did file a new, separate WC-5 Form on August 28, 2012, alleging Major Depressive Disorder resulting from the March 25, 2010 termination, initiating LIRAB Case No. AB 2013-232/DCD No. 2-12-40661 (WC Claim 2).  The Director apparently disregarded the post-hearing filing of the Amended WC Claim 1 and held in her June 6, 2013 decision in WC Claim 1 that "the Director is unable to make a determination on the compensability of claimant's Major Depressive Disorder" as related to Cui's August 3, 2009 injury because "[t]he record is absent of a written claim from claimant for a Major Depressive Disorder."  The Director thus deferred the determination of compensability of Cui's Major Depressive Disorder in WC Claim 1. Cui subsequently appealed the Director's June 6, 2013 decision in WC Claim 1 to the LIRAB on June 24, 2013.

**B.   Cui's Second Workers' Compensation Claim - Case No. AB 2013-232 (DCD No. 2-12-40661)**

On August 28, 2012, Cui filed WC Claim 2 as a new, separate claim alleging Major Depressive Disorder resulting from the March 25, 2010 termination of her employment.

In a separate June 6, 2013 decision in WC Claim 2, the Director waived the statute of limitations set forth in Hawaii Revised Statutes (HRS) § 386-82 (2015) in light of the confusing nature of Cui's psychological situation and held, *inter alia*, that Cui sustained a compensable work injury of Major Depressive

---

[2]   The only two Amended WC-5 Forms in the record are both date stamped May 1, 2013, apparently filed under LIRAB Case No. AB 2013-232/DCD No. 2-12-40661 (WC Claim 2), and list an injury of "Major Depressive Disorder; Adjustment Disorder with Anxiety and Depressed Mood and Major Depression," with the date of accident as March 25, 2010, and the date of disability as August 3, 2009. However, in Cui's opening brief, she states that she filed the Amended WC-5 Forms for WC Claim 1 on May 3, 2013, to address Employer-Adjuster's objections that there was no claim for Major Depressive Disorder in the record.  In an October 31, 2014 post-trial brief, Employer-Adjuster also refers to an Amended WC-5 Form filed May 3, 2013.  Upon our review of the record, we find no other Amended WC-5 Forms.  It is unclear whether these are the Amended WC-5 Forms being referred to, since the March 25, 2010 date of accident and May 1, 2013 date stamp would indicate otherwise.  Because both parties concede that Amended WC-5 Forms were filed on May 3, 2013 alleging an injury of Major Depressive Disorder resulting from the August 3, 2009 work injury, we assume such an Amended WC-5 Form was filed on May 3, 2013.

Disorder as a result of her termination from employment on March 25, 2010.

Employer-Adjuster appealed the Director's June 6, 2013 decision in WC Claim 2 to the LIRAB on June 25, 2013.

On October 21, 2013, the parties stipulated to consolidate the cases for WC Claim 1 and WC Claim 2.

**C.    The LIRAB's October 26, 2016 Order**

The LIRAB's October 26, 2016 Order was a decision and order on the consolidated appeals of the Director's July 1, 2011 and June 6, 2013 decisions in WC Claim 1, and the Director's June 6, 2013 decision in WC Claim 2.

In its October 26, 2016 Order, the LIRAB affirmed the July 1, 2011 and June 6, 2013 decisions of the Director and held that it would not make a determination on whether Cui's current Major Depressive Disorder is related to her previously accepted WC Claim 1 work injury for Adjustment Disorder with Mixed Anxiety and Depressed Mood because the issue was reserved by the Director in her June 6, 2013 decision in WC Claim 1.

The LIRAB also reversed the Director's separate June 6, 2013 determination in WC Claim 2, wherein the Director determined that Cui's Major Depressive Disorder was a compensable work injury that resulted from her termination from employment on March 25, 2010.  The LIRAB reversed the Director's decision on the basis that Cui's filing of her WC Claim 2 on August 28, 2012, which alleged a work injury of Major Depressive Disorder sustained on March 25, 2010, was time-barred and declined to address the merits of WC Claim 2.

On November 22, 2016, Cui filed a timely notice of appeal to this court appealing the LIRAB's October 26, 2016 Order.

## II.    POINTS OF ERROR

On appeal, Cui asserts that the LIRAB erred in its October 26, 2016 Order on the basis that: (1) Findings of Fact

(FOFs) 57, 60, 65, 66, 70, 74, 79-88, 91, and 92 are clearly erroneous; (2) Conclusions of Law (COLs) 1-3 were erroneous as a matter of law; and (3) the LIRAB's decision was otherwise made upon unlawful procedure, or was arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## III.  STANDARD OF REVIEW

Appellate review of a LIRAB decision is governed by HRS § 91-14(g).  Igawa v. Koa House Rest., 97 Hawaiʻi 402, 405-06, 38 P.3d 570, 573-74 (2001).  At the time of the LIRAB's decision, HRS § 91-14(g) provided:

> **§91-14  Judicial review of contested cases.**
> . . . .
> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> | | |
> |---|---|
> | (1) | In violation of constitutional or statutory provisions; |
> | (2) | In excess of the statutory authority or jurisdiction of the agency; |
> | (3) | Made upon unlawful procedure; |
> | (4) | Affected by other error of law; |
> | (5) | Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or |
> | (6) | Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion. |

Under HRS § 91-14(g),

> [COLs] are reviewed de novo, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); [FOFs] are reviewable under the clearly erroneous standard, pursuant to subsection (5); and an agency's exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6).

Pilaʻa 400, LLC v. Bd. of Land & Nat. Res., 132 Hawaiʻi 247, 263, 320 P.3d 912, 928 (2014) (citation omitted).  We review COLs that present mixed questions of fact and law "under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case."  Igawa, 97

Hawai'i at 406, 38 P.3d at 574 (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

## IV.  DISCUSSION

**A.    FOFs 57, 60, 65, 66, 70, 74, and 80 are not clearly erroneous.**

Cui argues that the challenged FOFs are "clearly erroneous both because they are inconsistent with the record as a whole but because they are also inconsistent with the Board's own other specific findings of fact."  Cui more specifically contends that the FOFs are inconsistent with FOFs 7, 36, 37, and 41, and appears to contend that they are also inconsistent with FOFs 59, 70, and 71.[3]

---

[3]     FOFs 7, 36, 37, 41, 59, 70, and 71 are as follows:

> 7.  According to Claimant's testimony, she did not believe that she sustained a new injury after her termination and did not know that she needed to file a second claim. Claimant believed that her symptoms continued to be related to her August 3, 2009 case.  However, she later filed another claim for a March 25, 2010 work injury at the suggestion of her attorney.
> . . . .
> 36.  Claimant testified that she was not surprised to get the March 22, 2010 termination letter and that she was not afraid to lose her job, because she knew she would be fired when she received the [Notice To Improve Performance].
> 37.  Claimant testified that her psychological condition started in July 2009 and continued to worsen over time, but that there was no change in her symptoms after she received the March 22, 2010 letter.
> . . . .
> 41.  On March 27, 2010, Dr. Ponce noted that Claimant seemed to be in a "good space" and that a trip to China would do her a lot of good.
> . . . .
> 59.  In a May 2, 2011 report, Dr. Ponce disagreed with Dr. Streltzer's opinion that Claimant's Major Depression was due to her termination.  Rather, Dr. Ponce stated that Claimant was first diagnosed with Major Depression four months after she was notified of her termination but that she was already depressed before her March 25, 2010 termination.
> . . . .
> 70.  [Dr. Ponce] understood that around March 2010, Claimant received a letter that her position had been terminated.  From March to June 2010, Claimant decompensated and there was a noticeable downward spiral.  Dr. Ponce stated that he did not inform Claimant that he had changed his diagnosis.
> 71.  Dr. Ponce explained that the change in his diagnosis was a matter of degree; he believed that whether

In FOFs 57, 60, 65, and 66, the LIRAB found:

> 57. Dr. Streltzer prepared a supplemental report dated October 28, 2010, following his review of additional records, wherein he opined that Claimant's Adjustment Disorder, had not resolved and worsened into a Major Depressive Disorder with a decreased level of functioning, because she was fired from her job on March 25, 2010. He further opined that Claimant would have been able to continue in her usual and customary duties without psychiatric impairment, had she not been terminated.
>
> . . . .
>
> 60. Joseph P. Rogers, Ph.D., a psychologist, examined Claimant at Employer's request. In his May 21, 2012 report, Dr. Rogers diagnosed Claimant with a Major Depressive Disorder, Current Status Unknown Due to Symptom Magnification, and agreed with Dr. Streltzer that Claimant's Adjustment Disorder worsened into a Major Depressive Disorder because of her March 25, 2010 termination.
>
> . . . .
>
> 65. Dr. Zichittella opined that Claimant's August 3, 2009 work injury was permanent and stable and deferred to Dr. Roger's permanent impairment rating and apportionment with regard to the August 3, 2009 work injury. He also agreed with Dr. Rogers's assessment that Claimant would have continued her full employment if she had not been terminated.
>
> 66. However, Dr. Zichittella also stated that, with regard to the March 25, 2010 work injury claim, Claimant had 3% permanent impairment of the whole person, all due to preexisting psychological factors.

FOFs 57, 60, 65, and 66 are merely summaries of Dr. Streltzer's, Dr. Rogers', and Dr. Zichitellas' respective reports and opinions contained in the record. Although the doctors' opinions may be inconsistent with Cui and Dr. Ponce's perceptions and opinions on the etiology and status of Cui's condition, as reflected in FOFs 7, 36, 37, 41, 59, 70, and 71, they are accurate reflections of the respective doctors' reports and opinions. Accordingly, FOFs 57, 60, 65, and 66 are not clearly erroneous. See Igawa, 97 Hawai'i at 405-06, 38 P.3d at 573-74.

Similarly, FOF 70, which stated

> 70. [Dr. Ponce] understood that around March 2010,

---

> Claimant had an Adjustment Disorder or Major Depression was a matter of semantics. He also believed that, in retrospect, Claimant could have been diagnosed with a major depression from the beginning.

(Footnote omitted.)

8

> Claimant received a letter that her position had been terminated. From March to June 2010, Claimant decompensated and there was a noticeable downward spiral. Dr. Ponce stated that he did not inform Claimant that he had changed his diagnosis.

is not clearly erroneous because it is an accurate reflection of Dr. Ponce's August 26, 2014 testimony. See id. at 405-06, 38 P.3d at 573-74.

> In FOF 80, the LIRAB found:

> Leading up to Dr. Ponce's diagnosis of Major Depressive Disorder on June 1, 2010, the record on appeal evidences that Claimant reported a worsening of her symptoms as early as December 5, 2009, after she was verbally notified of her termination. On that date, Dr. Ponce noted that Claimant had "spiraling depression/anxiety" after being informed of her termination. Thereafter, he noted that the reality of her termination was sinking in. Also, the frequency of her visits had increased. On February 22, 2010, Claimant saw Dr. Ponce in an urgent session for a panic attack, related to the reality of her termination. On May 29, 2010, Dr. Ponce noted that Claimant had "continuing excessive worrying, jitteriness & depression" because awareness of her termination was finally sinking in. On June 1, 2010, Dr. Ponce submitted a treatment plan with a diagnosis of Major Depressive Disorder. Also, Claimant testified that during the one month before her termination, she forced herself to work but did not function well in her job and that her condition worsened over time. Dr. Ponce's records further indicate that Claimant attributed her condition, at least in part, to her eventual termination.

FOF 80 appears to be a reiteration of FOFs 27, 28, 32, 40, 46, and 47.[4] FOFs 27, 32, and 46 are accurate reflections of Dr.

---

[4] FOFs 27, 28, 32, 40, 46, and 47 state:

> 27. On December 5, 2009, Dr. Ponce noted that Claimant had "spiraling depression/anxiety" after being verbally informed her employment would be terminated.
> 28. Claimant testified that for one month before her March 25, 2010 termination, she forced herself to work, but did not function well in her job. . . .
> . . . .
> 32. On February 22, 2010, Claimant saw Dr. Ponce in an urgent treatment session for a "panic attack." Dr. Ponce noted that the reality of being fired was sinking in.
> . . . .
> 40. Between her receipt of Employer's February 8, 2010 letter and her termination on March 25, 2010, Claimant saw Dr. Ponce six times for individual and/or family therapy sessions.
> . . . .
> 46. On May 29, 2010, Dr. Ponce noted that Claimant had "continuing excessive worrying, jitteriness &

Ponce's notes in Cui's psychiatric progress reports for: December 5, 2009; February 22, 2010; and May 29, 2010. FOF 28 is an accurate reflection of Cui's August 26, 2014 testimony. FOF 40 is sufficiently supported by Cui's psychiatric progress reports, which lists sessions 13 through 18 with Dr. Ponce as occurring on February 20, 2010 through March 13, 2010. FOF 47 is reflected in Dr. Ponce's June 1, 2010 treatment plan for Cui. Accordingly, FOFs 27, 28, 32, 40, 46, 47, and 80 are not clearly erroneous. See Igawa, 97 Hawai'i at 405-06, 38 P.3d at 573-74.

Cui next contends that the LIRAB erred in FOF 74, which states:

> 74. The Board does not credit Dr. Ponce's opinion that Claimant could have qualified for a Major Depressive Disorder diagnosis from the beginning of her claim. The record on appeal indicates that Claimant's symptoms appeared to deteriorate after she was verbally informed of her termination. Dr. Ponce's notes documented that Claimant "slipped" or deteriorated into the Major Depressive Disorder over several months and, contrary to his testimony, the symptoms he attributed to his diagnosis of a Major Depressive Disorder were not present from the beginning.

It is well established that:

> courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

Igawa, 97 Hawai'i at 410, 38 P.3d at 578 (quoting In re Application of Hawaiian Elec. Co., Inc., 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996)). In a worker's compensation case, the "credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22

---

depression" because awareness of her termination was finally sinking in.
47. Dr. Ponce submitted a June 1, 2010 treatment plan noting a diagnosis of Major Depressive Disorder. . . .

(2001) (citation omitted).

The LIRAB's FOFs 27, 46, 47, 49, 51, and 53 indicate that Dr. Ponce noted: on December 5, 2009, that Cui had spiraling depression/anxiety after being verbally informed her employment would be terminated (FOF 27); on May 29, 2010, that Cui had continuing excessive worrying, jitteriness and depression because awareness of her termination was finally sinking in (FOF 46); on June 1, 2010, that he diagnosed Cui with Major Depressive Disorder as Cui was exhibiting symptoms of major depression (FOF 47); on June 12, 2010, that Cui was slipping into a major depression (FOF 49); on August 21, 2010, that Cui was in the throes of a major depression (FOF 51); and on September 11, 2010, that Cui had slipped into a Major Depressive Disorder (FOF 53). Further, in Dr. Ponce's June 12, 2010 notes, Dr. Ponce indicated that Cui was "[i]ncreasingly complaining of symptoms indicating that she is indeed slipping into a 'Major Depression'" and that she had "[i]ncreased frequency of suicidal ruminations[.]" As stated previously, FOFs 27, 46, and 47 are not clearly erroneous. Additionally, insofar as FOFs 49, 51, and 53 have not been challenged on appeal, they are binding on this court. Kelly v. 1250 Oceanside Partners, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006) (citation omitted). These unchallenged FOFs and the record substantiate the LIRAB's finding that Cui's symptoms appear to have deteriorated from her original diagnosis into Major Depressive Disorder over several months after being verbally informed that she would be terminated. As a result, FOF 74 is supported by the record and is not clearly erroneous. See Igawa, 97 Hawai'i at 405-06, 38 P.3d at 573-74. Additionally, it is within the LIRAB's discretion to decide what weight, if any, to give Dr. Ponce's testimony. See Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22; cf De Victoria v. H & K Contractors, 56 Haw. 552, 559, 545 P.2d 692, 698 (1976) (holding that "[t]he issue of credibility is one within the primary responsibility of the Board

as the fact finder whose determination will not be disturbed lightly. But where the record reveals no conflict in the evidence or impeachment of any witness, the court will not sustain a finding as to credibility which it is firmly convinced is mistaken." (citations omitted)). This court declines to disturb FOF 74 and the LIRAB's assessment of the credibility of the witness and the weight it gave to the evidence.

**B.    The LIRAB did not err in FOFs 79-83 and COLs 1 and 2, by determining that Cui's WC Claim 2 was untimely pursuant to HRS § 386-82.**

Cui challenges FOFs 79-83 and COLs 1 and 2, arguing that the LIRAB erred in determining that her WC Claim 2 filed on August 28, 2012, alleging a March 25, 2010 work injury, was filed outside of the two-year statute of limitation of HRS § 386-82 and that the LIRAB's determination was contrary to Demond v. University of Hawaii, 54 Hawai'i 98, 503 P.2d 434 (1972).

In applicable part, HRS § 386-82 provides:

§386-82 Claim for compensation; limitation of time. The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations[:]
  (1)    Within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest; and
  (2)    Within five years after the date of the accident or occurrence which caused the injury.

In this case, there is no contention that Cui's WC Claim 2 was not filed "[w]ithin five years after the date of the accident or occurrence which caused the injury." See HRS § 386-82(2). Therefore, the only timeliness issue on appeal is whether Cui's WC Claim 2 was within the two-year statute of limitations under HRS § 386-82(1). As pertaining to HRS § 386-82(1), the supreme court has held that "the two-year statute of limitations for the filing of a workers' compensation claim begins to accrue when the claimant's injury becomes manifest, as set forth under Demond." Hayashi v. Scott Co., 93 Hawai'i 8, 12, 994 P.2d 1054, 1058 (2000). "In Demond, [the supreme] court

. . . held that 'the time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of his injury or disease.'" Id. (citations and original brackets omitted) (quoting Demond, 54 Hawai'i at 104, 503 P.2d at 438).

In FOFs 79-83, the LIRAB determined that Cui's WC 2 Claim was untimely, as follows:

> 79. The Board finds that the effect of Claimant's Major Depressive Disorder, as it may be related to a March 25, 2010 accident date, manifested by June 1, 2010.
> 80. Leading up to Dr. Ponce's diagnosis of Major Depressive Disorder on June 1, 2010, the record on appeal evidences that Claimant reported a worsening of her symptoms as early as December 5, 2009, after she was verbally notified of her termination. On that date, Dr. Ponce noted that Claimant had "spiraling depression/anxiety" after being informed of her termination. Thereafter, he noted that the reality of her termination was sinking in. Also, the frequency of her visits had increased. On February 22, 2010, Claimant saw Dr. Ponce in an urgent session for a panic attack, related to the reality of her termination. On May 29, 2010, Dr. Ponce noted that Claimant had "continuing excessive worrying, jitteriness & depression" because awareness of her termination was finally sinking in. On June 1, 2010, Dr. Ponce submitted a treatment plan with a diagnosis of Major Depressive Disorder. Also, Claimant testified that during the one month before her termination, she forced herself to work but did not function well in her job and that her condition worsened over time. Dr. Ponce's records further indicate that Claimant attributed her condition, at least in part, to her eventual termination.
> 81. The Board finds that Claimant knew or should have known the nature, seriousness and probable compensable character of her psychological condition within days after June 1, 2010.
> 82. Claimant's WC-5 was filed on August 28, 2012 - more than two years after June 1, 2010 - the date her alleged March 25, 2010 work accident became manifest.
> 83. The Board finds that Claimant's August 28, 201[2][5] written claim for a March 25, 2010 work accident was untimely.

The LIRAB further determined in COL 1 that "Claimant's claim filed on August 28, 2012 was time-barred by the two-year statue of limitations set forth under Section 386-82, H.R.S. (AB

---

[5] The referenced date of Claimant's written claim was corrected from "August 28, 2010" to "August 28, 2012" by "Order Granting Employer's Motion for Correction of Decision and Order Filed October 26, 2016," filed on November 16, 2016.

2013-232)" on the basis that "[t]he effects of Claimant's Major Depressive Disorder manifested by June 1, 2010, and by that date, Claimant knew or should have known of the nature, seriousness and probable compensable character of her psychological condition." The LIRAB also determined in COL 2 that, since Cui's WC Claim 2 was time-barred, the LIRAB would not determine the merits of Cui's WC Claim 2 in terms of whether it was compensable and if compensable, the extent of permanent partial disability that resulted from that work injury.

Cui contends that the LIRAB erred in finding and concluding that her WC Claim 2 filed on August 28, 2012 was time-barred under HRS § 386-82(1) because Cui did not and should not have reasonably recognized the probable compensable character of her Major Depressive Disorder on or about June 1, 2010. Cui does not appear to challenge the timing of when she recognized the nature or seriousness of her claimed injury. Cui supports her position by arguing that she did not recognize that she had suffered a new injury, as she testified that "[f]or my knowledge, I don't know this is separate case. I never thought about it's going to be a separate case. I always think this is one case." Cui also puts forth several plausible dates for when a reasonable person should have recognized the compensable character of Cui's Major Depressive Disorder.

The LIRAB made its determination that Cui's Major Depressive Disorder manifested on June 1, 2010, or within days thereafter, primarily based on Dr. Ponce's June 1, 2010 treatment plan that diagnosed Cui with Major Depressive Disorder and Cui's declining condition prior to the issuance of that diagnosis. Leading up to Dr. Ponce's June 1, 2010 diagnosis, Dr. Ponce noted on December 5, 2009, that being verbally informed of her termination was "a 'blow' to [Cui] and has heightened her anxiety/depression." Dr. Ponce assessed Cui with "[s]piraling depression/anxiety ostensibly because supervisor 'verbally'

informed her her position will be terminated." On February 22, 2010, Dr. Ponce noted during an urgent session with Cui that "[t]he reality of losing her job is beginning to sink in. Exacerbation of symptoms." In his June 1, 2010 treatment plan, Dr. Ponce then diagnosed Cui with "Major Depressive Disorder, single episode, mod. severe w/out psychotic features, mood congruent (296.23); occupational problem (V62.2)." Dr. Ponce also stated that Cui's prognosis was "Fair. Is exhibiting symptoms of Major Depression decompensating from initial Adj. Disorder w/ Mixed Anxiety & Depressed Mood fr. termination from job."

Despite Dr. Ponce testifying that he never informed Cui that he changed her diagnosis from Adjustment Disorder with Mixed Anxiety and Depressed Mood to Major Depressive Disorder, the June 1, 2010 treatment plan, as well as Dr. Ponce's notes documenting Cui's psychiatric progress, indicate that those documents showing a deterioration in her condition and the change in diagnosis were sent to Cui's legal counsel, Lowell Chun-Hoon, Esq.,[6] and one of Cui's treating physicians, Nicole Littenberg, M.D., as well as Employer-Adjuster.

Based on the foregoing, the LIRAB's findings in FOFs 79-83 that Cui, as a reasonable person, should have recognized the probable compensable character of her Major Depressive Disorder on June 1, 2010, or shortly thereafter, is not clearly erroneous as it is supported by reliable, probative, and substantial evidence on the whole record. See Hayashi, 93 Hawai'i at 12, 994 P.2d at 1058; Igawa, 97 Hawai'i at 405-06, 38 P.3d at 573-74.

---

[6] Mr. Chun-Hoon had an ethical obligation, pursuant to Hawaii Rules of Professional Conduct (HRPC) Rule 1.4(a)(4) to keep his client reasonably informed about the status of the matter. The commentary to the rule states that a lawyer may be justified in withholding information in some circumstances, such as "[a] lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client." HRPC Rule 1.4, cmt 7.

Although Cui points to evidence in the record that could plausibly establish a later date of manifestation, since the LIRAB's findings are not clearly erroneous, this court "decline[s] to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field." Igawa, 97 Hawai'i at 409-10, 38 P.3d at 577-78 (quoting In re Application of Hawaiian Elec. Co., Inc., 81 Hawai'i at 465, 918 P.2d at 567). Accordingly, the LIRAB did not err in concluding in COL 1 that WC Claim 2 was time-barred by the two-year statue of limitations under HRS § 386-82(1) because the effects of Cui's Major Depressive Disorder manifested on or around June 1, 2010, and thereby declining to address the merits of Cui's WC Claim 2 in COL 2.

**C.     The doctrine of quasi-estoppel is not applicable.**

Cui next argues that Employer-Adjuster should be barred under the doctrine of quasi-estoppel from arguing that her WC Claim 2 was time-barred because Employer-Adjuster voluntarily made temporary total disability payments to Cui under WC Claim 1 until March 7, 2011.[7] Cui asserts that those payments led her to believe that WC Claim 1 was the proper industrial accident to receive compensation for Cui's subsequent Major Depressive Disorder.

"The doctrine of quasi-estoppel provides 'that one should not be permitted to take a position inconsistent with a previous position if the result is to harm another.'" In re Hawaii Org. of Police Officers, 134 Hawai'i 155, 160, 338 P.3d 1170, 1175 (App. 2014) (quoting Univ. of Hawaii Prof'l Assembly on Behalf of Daeufer v. Univ. of Hawaii, 66 Haw. 214, 221, 659

---

[7]     March 7, 2011, was the date of Employer-Adjuster providing Cui with its Notice of Intent to Terminate Benefits. Pursuant to the notice, benefits were not terminated until March 21, 2011.

P.2d 720, 726 (1983)), aff'd on other grounds sub nom. In re Grievance Arbitration Between State Org. of Police Officers, 135 Hawaiʻi 456, 353 P.3d 998 (2015).

In this case, the record indicates that Employer-Adjuster had only voluntarily accepted liability as to Cui's WC Claim 1 work injury, "specifically adjustment disorder with mixed anxiety and depressed mood[,]" and was required to make temporary total disability and temporary partial disability payments in the manner specified in the Director's April 22, 2010 decision for that injury. The record is devoid of any evidence that Employer-Adjuster held the position that Cui's Major Depressive Disorder was compensable under her WC Claim 1 or that Employer-Adjuster made voluntary payments[8] for Cui's Major Depressive Disorder. As a result, the doctrine of quasi-estoppel is not applicable here.

**D. The LIRAB did not err by failing to address issues that had been deferred by the Director.**

Cui also challenges FOFs 84-88, 91, and 92 and COLs 1 and 3 to the extent that the LIRAB declined to address the issue of whether Cui's Major Depressive Disorder was related to her August 3, 2009 injury in WC Claim 1. Cui argues that this entire matter, and her multiple claims, arose from the August 3, 2009 injury and should thus be treated as a single injury.

FOFs 84-88, 91, and 92 state:

> 84. However, the Board makes no determination whether Claimant's Major Depressive Disorder is related to her August 3, 2009 work injury, because such issue was reserved by the Director.
>
> 85. A determination on Claimant's entitlement to temporary total disability benefits after March 21, 2011 is dependent on the Director's determination of Employer's liability for Claimant's claim for a Major Depressive Disorder as it may relate to her August 3, 2009 work injury.
> 86. Therefore, it is premature for the Board to determine whether Claimant is entitled to, and Employer

---

[8]   HRS § 386-83(a) (2015) states in relevant part that "[i]f payments of income and indemnity benefits have been made voluntarily by the employer, the making of a claim within the time prescribed in section 386-82 shall not be required."

liable for, such temporary total disability benefits before the Director makes her determination on the issue of compensability of Claimant's Major Depressive Disorder as it may be related to Claimant's August 3, 2009 work injury.

87. A determination on Claimant's entitlement to temporary partial disability benefits after March 25, 2010 is dependent on the Director's determination of Employer's liability for Claimant's claim for a Major Depressive Disorder as it may relate to her August 3, 2009 work injury.

88. Therefore, it is premature for the Board to determine whether Claimant is entitled to, and Employer liable for, such temporary partial benefits before the Director's [sic] makes her determination on the issue of compensability of Claimant's Major Depressive Disorder as it may be related to her August 3, 2009 work injury.

. . . .

91. A determination on Claimant's entitlement to permanent partial disability benefits for more than the previously awarded 8% of the whole person is dependent on the Director's determination of Employer's liability for Claimant's claim for a Major Depressive Disorder as it may relate to her August 3, 2009 work injury.

92. Therefore, it is premature for the Board to determine whether Claimant is entitled to, and Employer liable for, additional permanent partial disability benefits before the Director's [sic] makes her determination on the issue of compensability of Claimant's Major Depressive Disorder as it may be related to her August 3, 2009 work injury.

A trial court's label of a finding of fact or conclusion of law is not determinative of the standard of review. Crosby v. State Dep't of Budget & Fin., 76 Hawaiʻi 332, 340, 876 P.2d 1300, 1308 (1994). FOFs 84-88, 91 and 92 are actually COLs and we review them as such.

COLs 1 and 3 state, in relevant part:

1. . . . [t]he Board makes no determination whether Claimant's Major Depressive Disorder is related to her August 3, 2009 work injury, because such issue was reserved by the Director.

. . . .

3. Since the Director deferred determination on Employer's liability for Claimant's Major Depressive Disorder as it may relate to her August 3, 2009 work injury, the Board further concludes that it is premature to determine (a) whether Claimant is entitled to temporary total disability benefits after March 21, 2011; (b) whether Claimant is entitled to temporary partial disability benefits after March 25, 2010; and (c) what is the extent of permanent partial disability, over 8% of the whole person, resulting from Claimant's August 3, 2009 work injury.

Hawaiʻi Administrative Rules (HAR) § 12-47-20 states

that "[t]he board may decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future determination."

On August 16, 2012, the LIRAB remanded the appeal of the Director's July 1, 2011 decision back to the Director for the purpose of "address[ing] compensability of a claim to be filed by Claimant for Major Depressive Disorder and for determination of any other issue the Director deems appropriate." (Emphasis added.) The issue on remand was heard at a May 2, 2013 hearing. However, as stated previously, Cui does not appear to have filed the Amended WC Claim 1 until May 3, 2013. Therefore, the Director held in her June 6, 2013 decision on WC Claim 1, that "the Director is unable to make a determination on the compensability of claimant's Major Depressive Disorder" as related to Cui's August 3, 2009 injury because "the record is absent of a written claim from claimant for a Major Depressive Disorder." The Director then deferred the determination of compensability of Cui's Major Depressive Disorder for lack of a written claim for Major Depressive Disorder in WC Claim 1.

It was within the LIRAB's discretion, pursuant to HAR § 12-47-20, to decline to determine whether Cui's Major Depressive Disorder is related to her WC Claim 1 work injury without the Director first determining the issue based on a claim to be filed by Cui for Major Depressive Disorder in WC Claim 1. Based on the foregoing, the LIRAB's FOFs 84-88, 91, and 92, which we determine to be COLs, and the portions of COLs 1 and 3 recited above, were not a violation of constitutional or statutory provisions, were not made upon unlawful procedure, and were not arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion. See HRS § 91-14(g)(1), (3), (6); HAR § 12-47-20 (stating that "[t]he board may decline to hear and determine any issue which the director in the decision on appeal did not decide or left for future

determination.").

Neither the Director nor the LIRAB has decided the issue of whether, based on a claim to be filed by Cui in WC Claim 1 for Major Depressive Disorder, Cui's current diagnosis of Major Depressive Disorder is related to her WC Claim 1 work injury. Therefore, this court determines that there is no decision upon which to review Cui's contention that this entire matter arose from the August 3, 2009 injury and should be treated as a single injury.

## V. CONCLUSION

We affirm the Decision and Order entered on October 26, 2016, by the State of Hawai'i Labor and Industrial Relations Appeals Board.

DATED: Honolulu, Hawai'i, December 3, 2019.

On the briefs:

Lowell K.Y. Chun-Hoon
(King, Nakamura & Chun-Hoon)
for Claimant-Appellant.

Gary N. Kunihiro,
and Shawn L.M. Benton,
(Leong Kunihiro Benton & Brooke)
for Employer-Appellee, Self-Insured
and Adjuster-Appellee.

Presiding Judge

Associate Judge

Associate Judge